IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JOSEPH DALE SONNIER**                                                                **PLAINTIFF**

**VS.**                                                         **CIVIL ACTION NO.: 3:15CV370-LRA**

**WARDEN NORRIS HOGANS, OFFICER
UNKNOWN MCCLENDON, MEDICAL
DIRECTOR UNKNOWN LITTLE, DR.
UNKNOWN ABANGAN, NURSE UNKNOWN
SMITH and ANTHONY HODGES**                                             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on Defendant Anthony Hodges's and Defendant Norris Hogans's Motions for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies [25 & 27]. Those Motions were filed in April, 2016, and, by the date of his Omnibus Hearing on June 28, 2016, Plaintiff Joseph Dale Sonnier had not responded to them. During the Omnibus Hearing, Sonnier testified that he had not received the Motions because he had been moved to a new location. The Defendants were directed to re-send the Motions, and Sonnier was given until two weeks after receiving them to submit his response. Hogans and Hodges notified the Court that they had re-sent the Motions to Sonnier on June 29, 2016; however, as of today's date, Sonnier has still not responded to the Motions for Summary Judgment.

Sonnier's claims stem from being stabbed by his cellmate on February 17, 2015. These Defendants characterize the event as an "alleged incident" where Sonnier was "allegedly stabbed by his cellmate." In the context of these Motions, whether the incident actually occurred is not a material fact and need not be resolved at this juncture. Nonetheless, in light of the mandate to construe all facts and inferences in the light most favorable to the non-movant, the Court will

1

refer to this incident in the manner described by Sonnier. *Jenkins v. C.R.E.S. Management, L.L.C.*, 811 F.3d 753, 756 (5th Cir. 2016). Sonnier's claims were originally outlined in his Complaint and further explained in his Response to this Court's Order of August 18, 2015. During his Omnibus Hearing, Sonnier's testimony provided additional information as to his claims. He contends that, on or about February 13, 2015, another inmate at the East Mississippi Correctional Facility, Christopher Anthony Fortuna, made an unauthorized move to Sonnier's cell. Sonnier and Fortuna knew each other and had not had any previous problems. On the evening of the 16th, Sonnier informed Defendant McClendon, who was in charge of the lockdown and certified count, that he did not feel safe in the same cell as Fortuna. According to Sonnier, Fortuna acted like he was hearing voices and appeared to be suffering from paranoia. McClendon ordered him to get in the cell, or risk an RVR. Sonnier went into the cell.

      Sonnier testified that, just before they went to sleep, he and Fortuna had been laughing and talking about guys they both knew. At around 2:30 a.m. on the 17th, Sonnier woke to find that his cellmate, Fortuna, was stabbing him repeatedly, a homemade knife in each hand. Sonnier got to the cell door and asked Fortuna why he had stabbed him. Fortuna said that he stabbed Sonnier because he knew that Sonnier was going to stab him. Sonnier stripped down to show Fortuna that he had no weapon, and Fortuna backed up a couple of feet and told Sonnier to just get out of the cell. Sonnier began beating on the cell door, and he was taken out within a few minutes.

      Sonnier was brought to the medical unit and, ultimately, was transferred to Rush Memorial Hospital. According to Sonnier, he was there for about three hours, where his wounds were cleaned and "patched up." He was told that the wounds would not be stitched, so that they would not get infected. By about 10:00 to 11:00 a.m. on the 17th, Sonnier returned to his cell.

When he arrived, the cell was still bloodstained, and Sonnier had to pay another inmate with coffee to have the cell cleaned.

The attack resulted in eight stab wounds—four in his left leg behind and around his knee; two on the left side of his back; one in his right bicep; and one in his right palm. For the next five or six days, Sonnier cleaned them himself in the shower, and he got Bandaids, gauze, and ibuprofen from the nurse. He went to medical a few times, but they told him that there was nothing they could do for his open wounds. Sonnier finally saw Dr. Abangan, who referred him to a specialist to see if there was any ligament damage. The specialist told Sonnier that everything appeared to be intact, and he was returned to EMCF.

Some time after the incident, Sonnier discovered that Fortuna was not supposed to be in his cell. Apparently, he moved to Sonnier's cell right after Sonnier's prior roommate moved out. Although Fortuna told Sonnier that the move was authorized by an officer, that was not the case. Since the incident, Sonnier has been diagnosed with anxiety and possible post-traumatic stress disorder. He had difficulty sleeping, but was prescribed medication for that. Because of his flashbacks and nightmares, Sonnier asked to be taken off psychiatric medications, so that he could leave EMCF. Other than anxiety and a "small limp," Sonnier testified that he had no permanent injuries as a result of the attack, although he does have scars behind his knees and on his legs and shoulder.

Sonnier sued Warden Hogans for failing to properly supervise the employees at the prison. He sued Unit Manager Anthony Hodges for the same reason and for failing to ensure that Sonnier's cell was cleaned. Sonnier's claims against McClendon are based on her failure to conduct a proper certified count by consulting the bed roster and her failure to properly respond to Sonnier's statements about not feeling safe in the cell with Fortuna. Medical Director Little

failed to ensure that Sonnier got the proper medical care, and, when Sonnier complained, he told him to talk to the nurse. Dr. Abangan failed to see him until May and then told Sonnier that he was fine while he still had open wounds and was on crutches. He did not send Sonnier to a specialist until after his wounds were healed. He also failed to ensure that Sonnier's wounds were properly cleaned. Nurse Smith promised, but failed, to bring him medical supplies, so that Sonnier went three days without having gauze, antibiotics or alcohol pads to clean his wounds. As a result of these acts and failure to act, Sonnier's wounds got infected, and he was in unnecessary pain.

Failure to exhaust is an affirmative defense, so these Defendants have the burden of demonstrating that Sonnier failed to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). At the summary judgment stage, this means that the Defendants "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir. 2010). The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Tex. St. Board of Dental Examiners*, 304 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). The burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Allen v. Rapides Parish Sch. Bd.*, 304 F.3d 619, 621 (5th Cir. 2000).

As Defendants point out, the applicable section of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Hodges and Hogans have moved for summary judgment on grounds that Sonnier has failed to comply with the exhaustion requirement by properly advancing his claims through the prison's Administrative Remedy Program.  These Defendants do not deny, and the record establishes, that Sonnier initiated a grievance through the ARP program and pursued it to completion.  Their argument is that the substance of the grievance cannot be construed so as to include Sonnier's current claims against them.  Sonnier's grievance describes his complaint as follows:

> On 02-17-15 at or around 2:40 A.M. I was asleep in Cell 213-B-Pod-Unit 2.  At this time I was awaken by inmate, "Christopher Anthony Fortuna #185609" stabbing me repeatedly (8) eight times in all.  Before we were racked down for the night I told the C.O. on duty that I did not feel safe locking down with him because he had been hearing voices and been acting paranoid all day.  At this time I was informed if I didn't lockdown I would receive a R.V.R. and be sent to the hold.
>
> I locked down so I wouldn't get into any trouble with disciplinary.  After I was stabbed repeatedly I was allowed to crawl to the cell door to try to obtain some sort of help. [sic] try to get out of the cell.  It took about (5) five minutes for someone to get to my cell, then another minute or two to have my cell opened.  After I was taken off the zone and transported to medical it took almost 30 minutes before they, the C.O. in charge to determine whether I would be transported to the hospital by a MDOC vehicle or an ambulance.  After I returned from the Rush Memorial Hospital it was determined that I had been stabbed twice (2) behind my left knee, (1) one time in my left calf, (1) one time on my outer thigh, (1) time in my right hand, (1) time in my right bicep, and (2) two times in my back on my left side (8) eight in all.  When I returned to the facility I requested that I be given a set of crutches or at the minimum a cane due to the fact I had open wounds on my legs, mainly behind my knee.  I was told the medical department was out of both canes and crutches.  Afterwards my wounds were only cleaned (1) one time in (2) two weeks and I received (1) one Ibuprofen.  An investigation was performed and it was determined that inmate "Christopher Anthony Fortuna MDOC #185609" was not legally supposed to be in cell 213 on Unit 2 B-pod.  On the bed roster I was the only person to be assigned cell 213.

>Now since this incident I walk with a limp, have nightmares almost every night and have been diagnosed by the psychiatric department with P.T.S.D., paranoia, and a nervous disorder.  Also with the location of said stab wounds I feel that "Christopher Anthony Fortuna #185609" was trying to murder me in my sleep and my concern that I expressed to the C.O. on duty was completely and utterly disregarded.  For that simple disregard of my safety I almost lost my life. When a M.T.C. Employee overlooked an inmate that was in fear for his safety.

While a prisoner must exhaust the administrative remedies that are available to him before he can proceed in federal court, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), he may avoid dismissal of his claims where he can show that the alleged remedy was not "available" to him. *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016).  Evidence that shows that the prisoner filed a grievance on another matter establishes that the process was "available" to him. *Putnam v. Traylor*, 633 F. App'x 600, 601 (5th Cir. 2016).  The grievance submitted by Sonnier demonstrates that the ARP process was available in his case.

As stated earlier, Sonnier claims that both Hogans and Hodges failed to properly supervise the employees at the prison.  Additionally, he alleges that Hodges is liable for failing to ensure that Sonnier's cell was cleaned.  The argument that Sonnier's claims against Hogans and Hodges should be dismissed merely because neither was specifically named in Sonnier's grievance is unpersuasive.  As the Fifth Circuit has stated, "Nothing in the PLRA requires prisoners to identify all defendants that they later sue." *Patterson v. Stanley*, 547 F. App'x 510, 511-12 (5th Cir. 2013) (citing *Jones*, 549 U.S. at 217).  The exhaustion requirement's primary purpose "is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and a complaint that initiates adversarial litigation." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).  It follows, therefore, that "a grievance can sufficiently identify a person even if it does not provide an actual name; functional descriptions and the like – e.g., a reference to 'the guards in the shower room'

on a certain date – would suffice." *Id.* at 523.  The substance of a grievance should "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, [although] for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." *Id*. at 522.  If the § 1983 claims against defendants who were not named in the grievance are of a different character from the conduct alleged in the grievance, then those claims have not been exhausted.  *Id*.

As the Supreme Court has recognized, the exhaustion requirement is not merely an arbitrary rule:  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  *Jones*, 549 U.S. at 204.  Additionally, the exhaustion process may reduce the number of suits filed by prisoners and also "improve the quality of suits that are filed by producing a useful administrative record."  *Id*.  The level of specificity required in a grievance is set by the prison's own grievance process.  *Jones*, 549 U.S. at 218.  The Administrative Remedy Program of the East Mississippi Correctional Facility is described in its Inmate Handbook, attached to Hogans's Motion for Summary Judgment as Exhibit B.  According to the Handbook, inmates are directed to keep their original letters of request "as brief as possible."  In so doing, however, the inmate is also advised to "present as many facts as possible to answer all of the questions (who, what, when, where, and how) concerning the incident."  Handbook, p. 18.

A review of Sonnier's ARP claim shows that, under EMCF policy or § 1983 jurisprudence, he adequately set out his complaint against the officer who threatened him with a disciplinary violation if he refused to enter his cell, as well as his claim that he received inadequate medical care, even though the individuals were not named at that time.  Nowhere in

7

his grievance, however, does Sonnier allege that Warden Hogans, or any other officer, failed to properly supervise prison employees.  Likewise, Sonnier's grievance failed to mention the condition of his cell, which also forms the basis of his complaint against Hodges.  These omissions prevented prison officials from investigating and resolving these claims prior to being sued in this Court; therefore, those claims have not been exhausted.  As many courts have held, an inmate cannot pursue a claim under § 1983 where he failed to adequately describe it through the grievance procedure, even though he set out the basis of another claim.  *See, e.g., Pearson v. Taylor*, 665 F. App'x 858, 867 (11th Cir. 2016) (dismissing deliberate indifference to medical needs claims against warden and deputy wardens where grievance only alleged excessive force against an officer);  *Ward v. Hoffman*, No. 15-2678, 2016 WL 6651870 at *2 (7th Cir. Nov. 10, 2016) (dismissing claims of excessive force where grievance only complained of procedures used by disciplinary committee); *Burns v. Eaton*, 752 F.3d 1136, (8th Cir. 2014) (where grievance only claimed one officer used excessive force by spraying an inmate with pepper spray, court properly dismissed deliberate indifference claim against a different officer who delayed turning on the shower so the prisoner could wash it off);  *Hubbard v. Danberg*, 408 F. App'x 553, 555-56 (3rd Cir. 2010) (dismissing claims of discrimination in job placement and mistreatment of disabled prisoners because grievance only alleged discrimination against prison chapter of the NAACP); and *Stone v. Albert*, 257 F. App'x 96, 98 (10th Cir. 2007) (affirming dismissal of claims for excessive force when grievance only alleged inadequate medical care).

Based on a review of the Motions for Summary Judgment and related briefs, the record in this case, and the relevant legal authorities, the Court is convinced that Sonnier has failed to exhaust his claims against Hogans and Hodges by first proceeding under EMCF's Administrative Remedy Program.  Although that failure to exhaust mandates that the claims

against these two Defendants be dismissed, it is not fatal to his remaining claims. *Jones*, 549 U.S. at 924 ("A typical PLRA suit with multiple claims . .. may combine a wide variety of discrete complaints, about interactions with guards, prison conditions, generally applicable rules, and so on, seeking different relief on each claim. There is no reason failure to exhaust on one necessarily affects any other."). This Court holds, therefore, that the Motions for Summary Judgment of Warden Norris Hogans and Anthony Hodges should be granted, and Joseph Sonnier's claims against them should be dismissed without prejudice for failure to exhaust his administrative remedies.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motions for Summary Judgment of Anthony Hodges [25] and Warden Norris Hogans [27] are hereby **GRANTED**, and the Plaintiff's claims against them are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**, this the 28th day of March, 2017.

S/ Linda R. Anderson_____
UNITED STATES MAGISTRATE JUDGE